# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>SHAHID RANDOLPH,<br><br>Defendant. | 1:20-cr-00240-TJK<br>1:22-cr-00163-TJK |

## DEFENDANT SHAHID RANDOLPH'S OPPOSED
## MOTION FOR SENTENCE REDUCTION

Defendant Shahid Randolph, through undersigned counsel, respectfully submits his Motion for Sentence Reduction, pursuant to 18 U.S.C. § 3582(c)(2). The Government has indicated that it opposes the relief sought herein. In support of this motion, Mr. Randolph states the following:

## PROCEDURAL BACKGROUND

On August 4, 2022, Mr. Randolph pleaded guilty to Count One in the October 29, 2020, Indictment in 20-cr-240 (TJK), charging him with one count of Unlawful Possession of a Firearm by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1) and Count One in the May 10, 2022, Indictment in 22-cr-163 (TJK), charging him with one count of Unlawful Possession of a Firearm by a Person Convicted of Crime Punishable by Imprisonment for a Term Exceeding One Year, in violation of Title 18 U.S.C. § 922(g)(1).

On September 26, 2023, Mr. Randolph was sentenced to 51 months as to Count One of Docket No. 20-cr-240 to run concurrently with Count One of Docket No. 22-cr-163. He was also sentenced to 36 months of supervised release. At the time of sentencing, the United States

Sentencing Guidelines (USSG) § 4A1.1(d) read: "Add 2 points if the defendant committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Mr. Randolph was serving a term of supervised release when he committed the instant offense.

At the time of sentencing, Mr. Randolph's criminal history category was IV. He received 2 points for unlawful possession of a firearm in Docket No. 19-cr-209 and 3 points for unarmed carjacking in Docket No. 2012-CF3-015717, for a subtotal of 5 points. In addition, pursuant to then-current USSG § 4A1.1(d), Mr. Randolph received a 2-point enhancement for a total of 7 points, putting him in category IV. At sentencing, the Court agreed with the government's computation of the offense level, 18, which included a 2-point enhancement for obstruction of justice. Thus, with an offense level of 18 and criminal history category IV, the applicable sentencing range was 41-51 months incarceration. Mr. Randolph was sentenced to 51 months of incarceration. On October 4, 2023, Mr. Randolph timely appealed his sentence.

## ARGUMENT

### I. Mr. Randolph's Sentence Warrants a Reduction Given His Decreased Guideline Range and the 3553(a) Factors

When a defendant "who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . the Court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent they are applicable." 18 U.S.C. § 3582(c)(2). 18 U.S.C. § 3553 directs the Court to impose a sentence that is sufficient, "but not greater than necessary" when the following factors are considered:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed – (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . (3) the kinds of sentences available; (4) the kinds of sentence and sentencing range established for (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines . . . (5) any pertinent policy statement . . . (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."

18 U.S.C. § 3553(a).

On November 1, 2023, the United States Sentencing Guidelines (USSG) were modified by Amendment 821. Pursuant to this amendment, Section 4A1.1(d) was struck and effectively replaced by subsection (e) to read as follows: "Add 1 point if the defendant (1) receives 7 or more points under subsections (a) through (d), and (2) committed the instant offense while under any criminal justice sentence, including probation, parole, supervised release, imprisonment, work release, or escape status." Amendment 821 is retroactive. *See* USSG § 1B1.10.

In evaluating the appropriate sentence reduction, "the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) . . . had been in effect at the time the defendant was sentenced." USSG § 1B1.10 (b)(1). At the time of sentencing, Mr. Randolph's criminal history category was IV. Given his prior convictions, Mr. Randolph's criminal history subtotal was 5 and, pursuant to then-current USSG § 4A1.1(d), he received a 2-point enhancement for a total of 7 points, putting him in category IV. Now, because Mr. Randolph's criminal history subtotal is 5, the enhancement is no longer applicable to him. Therefore, Mr. Randolph's criminal history category should be III. With an offense level of 18

3

and criminal history category III, the applicable sentencing range is 33-41 months incarceration. Because Mr. Randolph's sentence is above that range, his sentence warrants reduction.

Additionally, the 3553(a) factors counsel in favor of a reduction. As detailed at length in Mr. Randolph's sentencing memorandum and during the sentencing hearing, Mr. Randolph's history and characteristics militate in favor of a lesser sentence. As the Court knows, after discovering ███████████████████████████████ Mr. Randolph was diagnosed with ███████████████████████████████████ Despite his repeated complaints to jail staff about his symptoms starting in October 2020, ██████████ not diagnosed until April 2021.

While incarcerated, Mr. Randolph has repeatedly faced difficulties receiving follow-up care. Mr. Randolph's ████████████████████████████████████████████████ ███████████████████████, an MRI every six months is crucial ████████████████ ██████████. This is especially important given ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████████████████.[1] █████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ can be unpredictable.

Mr. Randolph has faced significant obstacles obtaining medical care while incarcerated following sentencing. Following his arrival at FCI Cumberland in November 2023, Mr. Randolph repeatedly requested an updated MRI because he had last received an MRI in April 2023. Mr. Randolph also pursued appropriate grievance procedures to obtain an updated MRI. During this

---

[1] ████████████████████████████████████████████████████████████████ ████████████████████████████

4

time, Mr. Randolph was experiencing concerning symptoms, ███████████████ ███████████████. Mr. Randolph repeatedly brought these concerns to medical staff at FCI Cumberland. On February 21, 2024, Mr. Randolph complained of ███████████ ███████████ *See* Exhibit 1, Medical Record Excerpt, p. 10. On March 6, 2024, Mr. Randolph complained of ███████████████████████████████ *See* Exhibit 1, p. 7, 8. On March 15, 2024, Mr. Randolph complained about ███████████ ███████████████████████████████████. *See* Exhibit 1, p. 5. Because roughly 11 months had elapsed since his last MRI, undersigned counsel contacted Christopher Gomez, Regional Director of the Mid-Atlantic, regarding Mr. Randolph's need for an updated MRI on March 14, 2024. *See* Exhibit 2. Mr. Randolph finally received an MRI in April 2024, a year after his previous scan and six months too late. *See* Exhibit 3. When Mr. Randolph finally received his MRI, it was inappropriately completed without contrast. The MRI revealed ██ ████████████████████████████████████████████████████████ *See* Exhibit 1, p. 2. The MRI report states that ███████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████ (emphasis added). Mr. Randolph has not been seen ███████████ and has not been told when he will see one. Mr. Randolph is experiencing ███████████████████████ and struggles to fall asleep because of the pain. Additionally, Mr. Randolph has repeatedly requested pain management care and has simply been directed to purchase over the counter aspirin or acetaminophen from the Commissary, which has not helped alleviate the pain.

Mr. Randolph has a wife and two daughters that he is determined to care for upon his release. While incarcerated, Mr. Randolph's mother, Chantee Randolph tragically passed away.

5

The loss of his mother was devastating to Mr. Randolph, who feels overwhelming remorse that he was unable to be with her in her final moments because of his poor choices. This gut-wrenching realization, coupled with his tenuous health status, has caused Mr. Randolph to realign his priorities. Recognizing how short life is, Mr. Randolph is motivated to ensure that he can be the parent his daughters need and deserve.

Mr. Randolph has taken advantage of opportunities to prepare himself for employment after his incarceration to be able to provide for his family. As the Court knows, while incarcerated prior to sentencing, Mr. Randolph worked toward and earned certificates for residential wiring, masonry, and carpentry. He also received a Personal Trainer and Nutrition certification from the International Sports and Sciences Association (ISSA). In addition, Mr. Randolph took advantage of every Free Minds offering available to him. He completed their Job Readiness & Personal Skill Building Apprenticeship where he attended and completed workshops on financial literacy, entrepreneurship, interview skills, communication, and workplace etiquette. He was an active participant in a Poet Ambassador training workshop. Mr. Randolph knows that upon his release he will have access to employment support provided by Free Minds.

Since arriving at his new facility following sentencing, Mr. Randolph has been significantly positively involved in religious life, continued education, and employment. While at FCI Cumberland, Mr. Randolph serves as an imam for the compound. In the Islamic faith, imams lead prayers and serve as community leaders. Mr. Randolph also voluntarily took a drug education course and has been working to learn sign language. As a result of his hard work in continuing education, Mr. Randolph is now able to serve as a teacher in the BOP's Adult Continuing Education ("ACE") classes. Mr. Randolph teaches Arabic and African American history ACE classes. Finally, Mr. Randolph has maintained employment in the prison as a clerk for the

psychology department and for the Chaplain. Mr. Randolph intends to pursue every opportunity available to him while incarcerated so that he can maintain employment and support his family following release.

Given Mr. Randolph's continued positive involvement while incarcerated and his lowered guidelines range, a reduction of his sentence is warranted. Mr. Randolph solely seeks a proportional adjustment of his sentence. Because Mr. Randolph's guidelines range is now 33-41 months, as opposed to 41-51 months, he respectfully submits that a sentence of 41 months is appropriate.

## II. An Indicative Ruling is Appropriate Here

The filing of a notice of appeal "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58, (1982). This jurisdictional shift "avoid[s] the confusion of placing the same matter before two courts at the same time and to preserve[s] the integrity of the appeal process." *United States v. Brown*, 732 F.3d 781, 787 (7th Cir. 2013) (internal quotations and citations omitted).

Pursuant to Fed. R. Crim. P. 37(a), if a timely motion is made for relief that a district court lacks authority to grant because of a pending appeal, the district court may: (1) defer considering the motion; (2) deny the motion; or (3) issue an indicative ruling. *See* Fed. R. Crim. P. 37(a). An indicative ruling is appropriate when the district court finds that the motion raises a substantial issue or when the district court would grant the motion if the court of appeals remands for that purpose. *Id.*

The Advisory Committee notes that indicative rulings serve the interests of judicial economy. *See* Fed. R. Crim. P. 37 Advisory Committee's Note. "Often it will be wise for the

district court to determine whether it in fact would grant the motion if the court of appeals remands for that purpose." *Id.* However, in the event the motion raises "complex issues that require extensive litigation" the district court may instead "state that the motion raises a substantial issue, and to state the reasons why it prefers to decide only if the court of appeals agrees that it would be useful. . ." *Id.* In either case, an indicative ruling is appropriate. *See* Fed. R. Crim. P. 37(a). Additionally, an indicative ruling is an appropriate response to a request for a sentence reduction when an appeal is pending. *Bell v. United States*, 676 A.2d 37, 41 (D.C. 1996).

Given Mr. Randolph's pending appeal and for the reasons elaborated in the previous section, we submit that an indicative ruling from the Court that it would grant Mr. Randolph's motion to reduce his sentence is warranted. However, if the Court finds itself unwilling to grant Mr. Randolph's motion without further litigation, we submit that an indicative ruling which states that the motion "raises a substantial issue" is appropriate so that we may request a remand to resolve any outstanding questions for the Court.

## **CONCLUSION**

For the foregoing reasons, Mr. Randolph respectfully requests the Court issue an indicative ruling that it would grant his motion and reduce his sentence upon remand.

Dated: April 30, 2024                  Respectfully submitted,

                                              */s/ Barry Coburn*
                                              Barry Coburn, DC Bar No. 358020
                                              Coburn & Greenbaum PLLC
                                              1710 Rhode Island Avenue, N.W.
                                              Second Floor
                                              Washington, DC  20036
                                              Tel:  202-643-9472
                                              Fax:  1-866-561-9712
                                              barry@coburngreenbaum.com

                                              *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 30th day of April, 2024, I caused the foregoing to be filed with the Court's electronic filing system (CM/ECF), which will serve copies upon all counsel of record.

                                                    */s/ Barry Coburn*
                                                    Barry Coburn