**United States District Court**
**For The District of Columbia**

| | |
|---|---|
| **United States of America,**<br><br>v.<br><br>**Shahid Randolph,**<br><br>**Defendant.** | Case Nos.  22-CR-163 (TJK)<br>20-CR-240 (TJK) |

**Emergency Unopposed Motion for Sentence Reduction**
**under 18 U.S.C. § 3582(c)(1)(A) & U.S.S.G. § 1B1.13**

**I.     Introduction**

Mr. Shahid Randolph, through undersigned counsel, respectfully requests that this Court grant this emergency unopposed motion for a sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13(b)(1)(A) and (B). At age 30, Mr. Randolph is terminally ill with a malignant tumor of the skull base. He has "known stage IV Chordoma of clivus with subsequent multiple [] craneal nerve palsies" and his "[p]rognosis [is] very poor and [he] could expire at any time." Ex. 1, Select 2025 Medical Records at 3, 24 (filed under seal). He is on the Federal Bureau of Prison's unit for hospice care, called "comfort care," because all prior treatments and surgeries have failed, he has no further options to treat his aggressive cancer, and the only option now is to manage his pain. *Id.* at 3, 27, 39.

Per the government, the Warden at Mr. Randolph's facility, FMC Butner, has already approved a reduction in sentence request for Mr. Randolph and forwarded it to the BOP's Office of General Counsel, who then must "solicit the opinion of either the Medical Director or the

1

Assistant Director, Correctional Programs Division depending upon the nature of the basis for the request," after which it must be approved by the Director of the BOP for final decision. *See* BOP Program Statement 5050.50 at 12-14 (Jan. 17, 2019).[1] Given Mr. Randolph's prognosis, he respectfully requests that it be this Court who grants his release expeditiously. Mr. Randolph has filed the substantively identical motion in Case No. 19-CR-209 (TSC).

In order to best provide for continuity of care, Mr. Randolph further requests that this Court issue an Interim Order so that his institution will expedite the process of identifying hospice care, providing his medications, and safely transporting him to the District. Similar interim orders have been issued in *United States v. Shelby Lewis*, 09-cr-213 (EGS), and in *United States v. Gary West*, 01-cr-68 (PLF), and have allowed the BOP to prioritize release planning for each individual. Mr. Randolph respectfully asks this Court to allow him to spend what little time he has left surrounded by his family. Assistant United States Attorney Thomas Stutsman has indicated that the government does not oppose this request or the proposed Interim Order.

## II. Argument

*Exhaustion.* As of July 3, 2025, Mr. Randolph's institution had initiated a reduction request on his behalf. Thus 30 days have passed as of August 2, 2025, and this Court is authorized to grant this motion under 18 U.S.C. § 3582(c)(1)(A).

*Extraordinary and Compelling Circumstances.* Mr. Randolph's terminal condition is an extraordinary and compelling reason to grant his release. He is both "suffering from a terminal illness" and "suffering from a serious physical or medical condition" that "substantially diminishes the ability of the defendant to provide self-care within the environment of a

---

[1] Available at https://www.bop.gov/policy/progstat/5050_050_EN.pdf.

correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(b)(1)(A) & (B).

Per his medical records, Mr. Randolph's skull base tumor has led to "several cancer related complications including aspiration pneumonia, dysphagia, acute encephalopathy, obstructive Hydrocephalus, multiple cranial nerve palsies and acute cancer related pain." Ex. 1, Select 2025 Medical Records at 3. A recent hospitalization showed "increased size of the left clival neoplasm with increased mass effect on the left temporal lobe and brainstem, unchanged mild hydrocephalus with effacement of the 4th ventricle, osseous destruction of the clivus, bilateral temporal and occipital bones, occipital condyles and lateral masses of C1," and "complete occlusion of the left ICA [inter carotid artery]." *Id.* His neurosurgeon "recommended no acute NSU [neurosurgery unit] intervention and no additional surgical options" because "[p]atient had unfortunately failed all of the prior aggressive treatment and surgeries for his tumor." *Id.*

Following these findings, Mr. Randolph, described as a "very unfortunate 30-year-old," discussed his "very poor prognosis" with his care team, and "consented to strict comfort care goals." *Id.* at 3, 27. These include signing a DNAR (Do Not Attempt Resuscitation) order and listing end-of-life instructions in his medical records as "DNI/DNR/DNT," which mean Do Not Intubate, Do Not Resuscitate, and Do Not Treat. *Id.* at 27, 39. His transfer to the BOP's hospice (comfort care) unit is for "subsequent care and full ADL [activities of daily living] assistance due to his weakness and general medical condition." *Id.* at 3; *see also id.* at 27 ("He is very weak and needs nursing assistance for all his ADLs.").

Once on the comfort care unit, his medical team described that he "c/o [complained]

3

10/10 generalized pain. Inmate presents with generalized weakness and fatigue. Inmate requires total care, and has trouble speaking, chewing, and swallowing." *Id.* at 16. In subsequent visits they described that he "looks severely cachectic [having cachexia, the physical wasting with loss of weight and muscle mass due to disease], as part of his irreversible terminal condition" and that he communicates by writing "[a] few words on paper, whispers as part of his communication," and "at times he needed to repeat words to be understood." *Id.* at 7, 18. While comfort care goals focus on pain management at the end of life, Mr. Randolph has "chronic unrelenting pain" and has communicated to his providers through writing that his pain is not well controlled. *Id.* at 2-3, 7. Despite strong pain medications such as a fentanyl patch, morphine injections, and oxycodone, his provider has "cauti[o]ned him that a pain medication regimen may not completely extinguish the discomfort." *Id.* at 2-3, 5, 9-10.

Mr. Randolph's terminal condition and related complications are extraordinary and compelling reasons for his release.

***18 U.S.C. § 3553(a) factors.*** In January 2025, Judge Kelly held that the section 3553(a) factors did not support his compassionate release release. *See* Case No. 22-CR-163, ECF No. 61 at 7-13. The balancing of those factors has now changed. Mr. Randolph is close to dying from terminal cancer, confined to a wheelchair or hospital bed, wasting away, unable to speak above a whisper, writing to communicate, and in chronic unrelenting pain despite strong pain medications. At just 30 years old, Mr. Randolph has had to make the wrenching choice to stop all interventions and live his remaining days on hospice. As the government recognized when not opposing this motion and his Warden when recommending his compassionate release, his current

4

condition will "prevent[] Mr. Randolph from recidivating," *id*. at 11, and it now outweighs the other § 3553(a) factors that prevented this Court from granting his motion previously.

With status points removed by Amendment 821, Mr. Randolph's guidelines range is 33-41 months; he has today served over 48 months in prison with a projected release date in less than 9 months, April 26, 2026, and eligibility for home confinement on October 29, 2025. *See* Ex. 2, Sentence Computation. Mr. Randolph does not have much time left inside prison in the normal course before release to his 36-month term of supervised release.

A compassionate release grant here would allow him to spend his remaining time outside prison walls and close to family and friends. His sister Emonie Randolph explained to counsel that grieving family members have repeatedly traveled down to Butner from the D.C. area after repeated confirmation of their names on the visitor list, only to learn that they were not listed and could not be let in to see Mr. Randolph. Release to Washington, D.C., will allow him to be surrounded by those who love and care for him in his final hours.

***Continuity of Care.*** Undersigned counsel has been in contact with the Supervisory Social Worker at FMC Butner and government counsel with the complex's General Counsel. Both have confirmed that in order to expedite Mr. Randolph's release planning, they require a Court order and/or a release date. Although Mr. Randolph's sister Emonie Randolph is prepared to care for him at her home with help from his brothers (as listed on his RIS application, *see* Ex. 1, Medical

5

Records at 73-74),[2] the Supervisory Social Worker also indicated that for an individual as sick as Mr. Randolph, they would most likely find a hospice location for him to return to.[3]

Undersigned counsel has also communicated with D.C.'s Office of Health Care Ombudsman and Bill of Rights, an office that has successfully helped several clients obtain needed medical insurance and medical care prior to release from incarceration. This office was able to confirm Mr. Randolph's Medicaid eligibility and begin a Medicaid Long Term Care Application, which is needed in order to receive hospice.

As was ordered in several other cases of seriously ill individuals, *see United States v. Shelby Lewis*, 09-cr-213 (EGS), and in *United States v. Gary West*, 01-cr-68 (PLF), Mr. Randolph requests that this Court issue an Interim Order that makes clear its intention to grant the reduction motion upon confirmation of a release address and in no event later than 30 days from the date the Interim Order is entered. Undersigned counsel will inform the Court upon the completion of release preparations so that the final Order can be entered.

### III. Conclusion

Mr. Randolph respectfully moves this Court to grant this unopposed motion and reduce his sentence to time served. He asks that this Court enter an Interim Order to expedite his release planning and continuity care.

---

[2] Emonie Randolph stated to counsel that the Probation Office visited her address on or about July 31, 2025 for release approval purposes.

[3] Counsel also believes it may be possible to provide hospice care inside their home and will discuss this further with the family and representatives from the D.C. Office of Health Care Ombudsman and Bill of Rights.

Respectfully submitted,

A. J. KRAMER
FEDERAL PUBLIC DEFENDER

*/s/ Joanna Munson Perales*
JOANNA MUNSON PERALES
Research & Writing Attorney
625 Indiana Ave NW, Suite 550
Washington, D.C. 20004
(202) 208-7500
Joanna_Perales@fd.org